**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Jonathan Charbonneau and Tricia Charbonneau,

Plaintiffs,

v.

Banana Joe's of Minnesota, Inc., a Minnesota corporation, d/b/a Banana Joe's; Clayton James Smeby; Officer Hagel (Badge #2601); Officer Savaugeau (Badge #6309); Officer E. Olson (Badge #5299); Sergeant Wallerich (Badge #7496); and John Doe,

Defendants.

Civil No. 02-419 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Peter J. Timmons, Esq., Timmons Law Office, 7900 Xerxes Avenue South, Suite 2000, Bloomington, Minnesota 55431, counsel for Plaintiff.

David G. Parry, Esq., Leonard Street and Deinard, 150 5th Street South, Suite 2300, Minneapolis, Minnesota 55402; and Thomas P. Harlan, Esq., Madigan Dahl & Harlan, P.A., 701 4th Avenue South, Suite 1700, Minneapolis, Minnesota 55415, counsel for Defendant Banana Joe's of Minnesota, Inc. d/b/a Banana Joe's.

Carrie L. Hund, Esq., Bassford Remele, 33 South 6th Street, Suite 3800, Minneapolis, Minnesota 55402-3701; and John M. Catron, Esq., Hansen Dordell Bradt Odlaug & Bradt, 3900 Northwoods Drive, Suite 250, Saint Paul, Minnesota 55112-6973, counsel for Defendant Clayton James Smeby.

Peter W. Ginder, Esq., and C. Lynne Fundingsland, Esq., Minneapolis City Attorney's Office, 300 Metro Center, 333 South 7th Street, Minneapolis, Minnesota 55402, counsel for Defendants Officers Hagel, Savaugeau, Olson, and Sergeant Wallerich.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on February 6, 2004, pursuant to a Motion for Summary Judgment brought by the City of Minneapolis (the "City"), Officers Hagel, Sauvageau, Kipke, and Olson, and Sergeant Wallerich (collectively the "Defendants").[1] For the reasons stated below, the Motion for Summary Judgment is granted.

## Background

On January 22, 2000, Jonathan Charbonneau and some friends had a surprise birthday party for his wife, Tricia Charbonneau. Jonathan and Tricia Charbonneau met at a friend's home at approximately 8:00 p.m. While at their friend's home, Tricia Charbonneau alleges she consumed one beer. Jonathan Charbonneau, Tricia Charbonneau, and a group of friends then left their friend's home by limousine to visit various bars in Minneapolis. While in the limousine, Tricia Charbonneau alleges she consumed a second beer. Over the course of the evening, the group visited two bars. Jonathan Charbonneau alleges he consumed one or two beers total at the bars and Tricia Charbonneau alleges she consumed two beers.

After having visited a couple of bars, the group decided to go to Banana Joe's, a bar and restaurant located in Minneapolis. The limousine stopped in front of Banana Joe's and half of the group went into the establishment. However, Jonathan and Tricia Charbonneau remained in the limousine with a friend named Jenny Blackwell. Eventually, Jonathan Charbonneau, Tricia Charbonneau, and Blackwell exited the limousine and approached the security guards at Banana Joe's. Jonathan and Tricia Charbonneau were allowed to enter Banana Joe's, but Blackwell was

[1] All claims against the City of Minneapolis and Officer Kipke were dismissed pursuant to a Stipulation of Dismissal With Prejudice filed with the Court on February 5, 2004.

denied access to the club because one of the security guards determined that she was too intoxicated to enter the club. Jonathan and Tricia Charbonneau then began to explain to the security guards that Blackwell had not consumed much alcohol over the course of the evening. When security continued to deny Blackwell access to Banana Joe's, Tricia Charbonneau stated "this is bullshit" to the security guard. Tricia Charbonneau alleges the security guard then pushed her away from the entrance to Banana Joe's.

Shortly thereafter, Jason Neros, another person who was taking part in the festivities with the Charbonneaus, exited the club. For reasons unknown, one of the security guards at Banana Joe's grabbed Neros and forced him to the ground. Tricia Charbonneau saw the incident and immediately grabbed onto the back of the security guard who was wrestling with Neros in an attempt to pull the security guard off of Neros. The security guard responded by pushing Tricia Charbonneau away. Tricia Charbonneau then made a second attempt to grab onto the security guard. Jonathan Charbonneau saw all of this and made an effort to restrain Tricia Charbonneau, but before Jonathan Charbonneau was able to do so, he was grabbed by a second security guard.

While all of this was occurring, Minneapolis police officers had been made aware of the commotion and were arriving on the scene. When they arrived at Banana Joe's, the police officers saw a large group of people surrounding the entrance to Banana Joe's. They also noticed a cloud of mace in the general vicinity of Banana Joes' entrance. Officer Wallerich saw Neros wrestling with the Banana Joe's security guards. Officer Olson observed the ruckus and also saw a person yelling at Tricia Charbonneau to move away from Neros and the security guards.

While Jonathan Charbonneau was being restrained by a security guard from Banana Joe's, Officer Hagel approached the two combatants. He observed that Clayton Smeby, a security guard for Banana Joe's, was attempting to restrain Jonathan Charbonneau, and that Jonathan Charbonneau appeared to be resisting Smeby's efforts to pin Jonathan Charbonneau's arms behind his back. Officer Hagel assisted Smeby in leading Jonathan Charbonneau to a squad car and forcing Jonathan Charbonneau's torso and face onto the vehicle so that Officer Hagel could handcuff him. Even while Jonathan Charbonneau was being held against the squad car, he continued to resist efforts by Smeby and Officer Hagel to bring his hands behind his back. Jonathan Charbonneau was told by Officer Hagel to "quit resisting," but Jonathan Charbonneau maintains he was not resisting, but was merely attempting to get his balance while standing on a sheet of ice. Jonathan Charbonneau alleges that at that point in the confrontation, the officer slammed his face into the hood of the squad car with such force that his eye glasses were broken. Eventually, Officer Hagel managed to force Jonathan Charbonneau's hands behind his back and handcuffed him.

After being handcuffed, Jonathan Charbonneau told officers that he had previously had a shoulder injury that required surgery. In fact, in 1998, and again in October 1999, Jonathan Charbonneau had surgery on his right knee and right shoulder. The officers then walked Jonathan Charbonneau to the police station. Jonathan Charbonneau alleges that he was forced to sit in the station with his hands handcuffed behind his back for a long period of time before an officer finally agreed to handcuff his hands in front of his body. Once at the station, Jonathan Charbonneau was arrested for Disorderly Conduct.

Tricia Charbonneau first became aware of the officers' presence when she was grabbed from behind and turned to see Officer Olson attempting to restrain her. Tricia Charbonneau admits that she recognized that the person grabbing her was an officer. However, Tricia Charbonneau hit Officer Olson in the face and continued to struggle with her. While they were struggling, Officer Olson hit Tricia Charbonneau once or twice on the side of the head. Both Officer Savaugeau and Sergeant Wallerich saw Tricia Charbonneau strike Officer Olson in the face and the two went to assist Officer Olson. During the struggle that followed, Officer Savaugeau slapped Tricia Charbonneau once and Sergeant Wallerich slapped her twice. Eventually, Tricia Charbonneau was brought to the ground and handcuffed. Tricia Charbonneau was then led to the nearby police station. Tricia Charbonneau was charged with obstruction with force.

As a result of the incident, Jonathan Charbonneau was charged with the misdemeanor offense of disorderly conduct. Tricia Charbonneau was charged with the gross misdemeanor offense of obstructing legal process (with force) and the misdemeanor offense of disorderly conduct. The charges against Tricia Charbonneau were suspended pursuant to an agreement in which she agreed not to commit a criminal offense similar to the one at issue, to pay the costs of prosecution, and to stay out of Banana Joe's. Eventually, the charges against Jonathan Charbonneau were dismissed after the City of Minneapolis failed to file a formal complaint.

Jonathan and Tricia Charbonneau brought this suit in state court alleging claims of assault, false arrest, malicious prosecution, the use of unnecessary force, and violations of 42 U.S.C. § 1983. Jonathan Charbonneau asserts he suffered injuries to both his left and right shoulders as a result of Defendants' actions. In addition, he asserts that he suffered injuries to

his face when it came in contact with the squad car. Tricia Charbonneau asserts that her arms and hands were bruised as a result of the handcuffs that were placed on her being too tight. The Defendants removed this case to federal court.

**Discussion**

**I. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inference that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## II. State Law Claims

### A. False Arrest

In order to maintain a cause of action for false arrest, a plaintiff must demonstrate that the defendant performed an arrest and that the arrest was unlawful. *See Lundeen v. Renteria*, 224 N.W.2d 132, 135 (Minn. 1974). "[I]f an arrest is made without proper legal authority, it is a false arrest." *Id.* at 135 (quoting Prosser, Torts (4 ed.) s 11). The test for lawfulness of an arrest is whether the arrest was made with probable cause. *See Lundeen*, 224 N.W.2d at 136. The Minnesota Supreme Court has defined probable cause to effectuate an arrest as "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty." *State v. Harris,* 121 N.W.2d 327, 330 (Minn. 1963) (citation omitted).

Under Minnesota law, public officials are automatically entitled to official immunity from state law claims such as false arrest and false imprisonment when their duties require the exercise of discretion, so long as the officer is not guilty of a willful or malicious wrong. *See Johnson v. Morris*, 453 N.W.2d 31, 41-42 (Minn. 1990); *Elwood v. County of Rice*, 423 N.W.2d 671, 677 (Minn. 1998). Thus, to determine whether official immunity is available in any given context requires a determination of whether the alleged acts were discretionary or ministerial and whether the alleged acts were malicious or willful. *See Davis v. Hennepin County*, 559 N.W.2d 117, 122 (Minn. Ct. App. 1997).

Malice, in the official immunity context, means intentionally committing an act that the official has reason to believe is legally prohibited. This is an objective inquiry that examines the legal reasonableness of an official's actions. *See State by Beaulieu v. City of Mounds View*, 518

N.W.2d 567, 571 (Minn. 1994). An officer does not commit a willful and malicious wrong unless the officer relies on information that the officer knows to be false. *See Johnson v. County of Dakota*, 510 N.W.2d 237, 240 (Minn. Ct. App. 1994). To overcome a defense based on official immunity, a plaintiff cannot rely on "bare allegations of malice"; rather, the plaintiff must present specific facts evidencing bad faith. *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982).

The parties do not appear to dispute that Officer Hagel was performing duties that required the exercise of his discretion in deciding whether to take Jonathan Charbonneau into custody. Thus, the Court must determine if Officer Hagel's actions were malicious or willful. Officer Hagel asserts that he did not arrest Jonathan Charbonneau, but merely assisted Smeby in restraining him until such time as Smeby could effectuate a citizen's arrest. Plaintiffs, on the other hand, assert that Officer Hagel arrested Jonathan Charbonneau. In support of this argument, Plaintiffs point to the fact that the City has been unable to provide Plaintiffs with the citizen's arrest form the City alleges Smeby filled out the night of the incident.

The Court cannot merely accept Defendants' assertion that Jonathan Charbonneau was arrested pursuant to a citizen's arrest without Defendants producing some form of documentary evidence to support this assertion. However, the Court finds that even if Officer Hagel was acting pursuant to his own arrest authority, he would be entitled to official immunity. When Officer Hagel arrived at Banana Joe's, he observed two men struggling with one another. Officer Hagel also observed that one of the men was a security guard for Banana Joe's. At that time, Officer Hagel intervened in the situation and attempted to restrain Jonathan Charbonneau. Jonathan Charbonneau continued to struggle with Smeby and Officer Hagel even though he was

aware that Officer Hagel was there in his capacity as a police officer. Jonathan Charbonneau admits that he continued to struggle with Officer Hagel despite Officer Hagel's warnings that he should "stop resisting." In light of Officer Hagel's observations and Jonathan Charbonneau's admissions regarding his own conduct, the Court finds that Officer Hagel's actions were not malicious, willful, or unreasonable under the circumstances, nor did Officer Hagel rely on information that he knew was false. Therefore, the Court finds that Officer Hagel is entitled to official immunity from the false arrest claim.

**III. 42 U.S.C. § 1983**

Section 1983 prohibits a person acting under color of state law from depriving another person of his or her "rights, privileges, or immunities secured by the Constitution and laws . . . ." Qualified immunity shields government officials as well as private individuals from civil liability under § 1983. *See Wilson v. Layne*, 526 U.S. 603, 614 (1999). A defendant is shielded from civil liability if it is shown that his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818. On a motion for summary judgment, the Court employs a three-part test to determine whether qualified immunity exists. *See Goff v. Bise,* 173 F.3d 1068, 1072 (8th Cir. 1999) (citing *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996)). First, the plaintiff must assert a violation of a constitutional right. *See id.* Second, the alleged right must be clearly established. *See id.* Third, taking the facts in the light most favorable to the plaintiff, there must be no genuine issues of material fact as to whether a reasonable official would have known that the alleged action violated the plaintiff's clearly established rights. *See id.*

**A. False Arrest**

The relevant inquiry in a Fourth Amendment false arrest case is whether the officers had probable cause to make an arrest. *See Baker v. McCollan*, 443 U.S. 137, 142 (1979). Probable cause exists when the totality of the facts, based on reasonably trustworthy information, would justify a prudent person's belief that the individual arrested had committed an offense at the time of the arrest. *See Smithson v. Aldrich,* 235 F.3d 1058,1062 (8th Cir. 2000) (quoting *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir. 1986)). Law enforcement officers are entitled to qualified immunity if they arrest a suspect under the mistaken belief that they have probable cause to do so; however, the mistake must be objectively reasonable. *See id.* at 1062. Therefore, the determination that must be made when considering whether law enforcement officers should be granted or denied qualified immunity is whether arguable probable cause existed for the arrest. *See id.*

Plaintiffs assert that their arrests were not based on probable cause or even arguable probable cause because they were not involved in any type of physical altercation at the time of their arrests. Jonathan Charbonneau asserts he was merely trying to keep Tricia Charbonneau away from the security guards when he was arrested. Tricia Charbonneau maintains that although she was moving towards the security guards she was not in physical contact with them at the time of her arrest. Defendants, on the other hand, assert that both probable cause and arguable probable cause existed for the arrest of Tricia Charbonneau. Defendants do not present any argument as to whether probable cause existed for the arrest of Jonathan Charbonneau, but instead rely on their previous assertion that he was not arrested by Officer Hagel.

The Court finds that Defendants had at least arguable probable cause for the arrests of Jonathan and Tricia Charbonneau. When the officers arrived at the scene, they noticed both Jonathan and Tricia Charbonneau were involved in a dispute with the security guards at Banana Joe's. Jonathan Charbonneau was attempting to restrain a woman in close proximity to a struggle taking place between an adult male and a security guard. Tricia Charbonneau, who was told to step away from the struggle, was advancing towards the combatants. When confronted by the officers, both Jonathan and Tricia Charbonneau resisted efforts by the officers to restrain them. The Court finds that Defendants acted in a reasonable manner when confronted with the scene outside of Banana Joe's and that the Defendants had at least arguable probable cause to believe that Jonathan and Tricia Charbonneau had committed offenses at the time they were arrested.

**B. Unreasonable Use of Force**

In determining whether the use of force is "reasonable" under the Fourth Amendment, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the government interests at stake. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citation omitted). The reasonableness of the use of force must be judged from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *See id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 20-22 (1968)). Indeed, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Johnson v. Glick*, 481 F.2d 1028, 1033 (1973). The reasonableness determination also must make allowances for the fact that police officers must often make split-second judgment in oftentimes tense situations. *See Graham*, 490 U.S. at 396-97.

Therefore, the United States Supreme Court has set out the reasonableness inquiry as one that requires courts to determine "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (citing *Scott v. United States*, 436 U.S. 128, 137-39 (1978)).

Both Jonathan and Tricia Charbonneau assert that Defendants used excessive force in effectuating the arrests. Jonathan Charbonneau contends that Defendants should not have handcuffed his arms behind his back, should have removed the handcuffs from behind his back once he made it known to the officers that he had a prior shoulder injury, and should not have forced his head against the hood of the squad car. Tricia Charbonneau asserts Officer Olson should not have hit her while Officer Olson was attempting to restrain her. Tricia Charbonneau also asserts that the handcuffs were placed on her arms so tightly that they resulted in bruises that lasted for more than one week.

The Court finds that the force used by the Defendants in restraining Jonathan and Tricia Charbonneau was reasonable given the circumstances. Jonathan Charbonneau resisted the efforts of Officer Hagel to handcuff his arms behind his back. Jonathan Charbonneau admits that he struggled with Officer Hagel and Smeby in an effort to keep his arms in front of him. Jonathan Charbonneau also admits that while he was being forced up against the squad car he was told by Officer Hagel to "stop resisting." Jonathan Charbonneau asserts that much of his body movement was due to the slippery conditions of the street, but Officer Hagel had no reason to suspect at the time anything other than that Jonathan Charbonneau was continuing in his efforts to resist being handcuffed. Jonathan Charbonneau's efforts to resist Officer Hagels' attempts to handcuff him forced Officer Hagel to seek leverage in restraining Jonathan

Charbonneau. Therefore, Officer Hagel pressed Jonathan Charbonneau's face up against the squad car in an effort to restrain him. The Court finds that in circumstances such as these the Defendants used reasonable force in restraining a man who was resisting the officers' efforts. The Court also finds that Defendants' actions were reasonable in allowing Jonathan Charbonneau to sit with his handcuffs behind his back. The handcuffs were in that position for less than an hour and, considering the struggle that Jonathan Charbonneau had with Officer Hagel, it was reasonable for Defendants to be wary of removing the handcuffs to reposition them at a time when the altercation was still ongoing.

Defendants also used reasonable force in restraining Tricia Charbonneau. Tricia Charbonneau admits that she hit and continued to struggle with Officer Olson even though she knew that Officer Olson was acting in her capacity as a police officer. The response of Officer Olson and the other Defendants was reasonable given the circumstances. Likewise, the Court finds that the application of handcuffs to Tricia Charbonneau does not amount to excessive force because she has established no permanent or long-term injury. *See Crumley v. City of Saint Paul*, *Minn.,* 324 F.3d 1003, 1008 (8th Cir. 2003) (quoting *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990) (excessive force was not used when plaintiff did not produce any medical records indicating "long-term injury as a result of the handcuffs.")). Based on the reasons stated above, the Court finds that the force used by the Defendants in restraining Tricia Charbonneau was reasonable under the circumstances.

## Conclusion

For the reasons stated, **IT IS HEREBY ORDERED**:

1. Defendants Hagel, Savaugeau, Olson, and Sergeant Wallerich's Motion for Summary Judgment (Doc. No. 22) are **GRANTED**.

Dated: March 9, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court